## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

| | | |
|---|---|---|
| **RAJAN PATEL,** | * | |
| **8701 Deanna Drive** | | |
| **Gaithersburg, MD 20882,** | * | |
| | | |
| *Plaintiff,* | * | |
| | | |
| **v.** | * | **Civil Action: 8:17-cv-1359** |
| | | |
| **EQUIFAX INFORMATION** | * | |
| **SERVICES LLC** | | |
| **1550 Peachtree Street, NW** | * | |
| **Atlanta, GA 30309** | | |
| | * | |
| **Serve on:** | | |
| | * | |
| **CSC-Lawyers Incorporating** | | |
| **Service Company** | * | |
| **7 St. Paul St., Ste. 1660** | | |
| **Baltimore, MD 21202** | * | |
| | | |
| **and** | * | |
| | | |
| **EXPERIAN INFORMATION** | * | |
| **SOLUTIONS, INC.** | | |
| **505 City Pkwy West** | * | |
| **Orange, CA 92668** | | |
| | * | |
| **Serve on:** | | |
| | * | |
| **The Corporation Trust** | | |
| **Incorporated** | * | |
| **351 West Camden St.** | | |
| **Baltimore, MD 21201** | * | |
| | | |
| **and** | * | |
| | | |
| **DISCOVER BANK** | * | |
| **12 Read's Way** | | |
| **New Castle, DE 19720** | * | |

1

| | |
|---|---|
| **Serve on:** | * |
| **The Corporation Trust** | * |
| **Incorporated** | |
| **351 West Camden St.** | * |
| **Baltimore, MD 21201,** | |
| | * |
| ***Defendants.*** | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, Rajan J. Patel, (hereafter the "Plaintiff") by counsel, and for his complaint against the Defendants, alleges as follows:

## PRELIMINARY STATEMENT

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American citizens. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should ultimately benefit from the resulting convenience and efficiency.

2.      Unfortunately, however, this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can sustain substantial harm, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3.      The ongoing technological advances in the area of data processing have

resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports," concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6.      Requiring CRAs to assure the "maximum possible accuracy" of consumer information is crucial to the stability of our banking system, to wit:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as

well as deny him the opportunity to obtain a mortgage to buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

8.     To further the primary goal of greater accuracy, the FCRA also requires CRAs, as well as "furnishers" of credit information to the CRAs, among many other duties, to conduct "reasonable investigations" into disputes lodged to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit reports, to correct or update any such errors or omissions, and to report back to the consumers the results of their investigations.

9.     This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff Rajan Patel against Equifax Information Services LLC; Experian Information Solutions, Inc.; and Discover Bank for violation of common law and for their willful and/or negligent violations of the Fair Credit Reporting Act, as described herein and asserts an additional claim against Discover Bank under common law.

## JURISDICTION

10.     The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. 1367.

11.     The Plaintiff is a natural person and resident of the State of Maryland. He

is a "consumer" as defined by 15 U.S.C. § 1681a(c).

12.     Upon information and belief, Equifax Information Services LLC (hereafter "Equifax") is a corporation incorporated under the laws of the State of Georgia and is authorized to do business in the State of Maryland.

13.     Upon information and belief, Experian Information Solutions, Inc. (hereafter "Experian") is a corporation incorporated under the laws of the State of Delaware and is authorized to do business in the State of Maryland.

14.     Upon information and belief, Equifax and Experian are each a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Upon information and belief, Equifax and Experian are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

15.     Upon information and belief, Equifax and Experian disburse such consumer reports to third parties under contract for monetary compensation.

16.     Discover Bank (hereafter "Discover") regularly does business and causes injury in Maryland.

17.     Beginning with the periodic statement with a closing date of August 26, 2016, numerous fraudulent charges began appearing on Plaintiff's Discover Card statement.

18.     Plaintiff did not make these fraudulent charges.

19.     Upon learning of these fraudulent charges, the Plaintiff immediately telephoned Discover to dispute the fraudulent charges.

20.    The Plaintiff asked the Discover representative who answered his call how to go about disputing the fraudulent charges and was told that he simply had to inform Discover orally over the phone that he disputed the fraudulent charges. The Plaintiff did so.

21.    Roughly one month passed and the fraudulent charges had not been removed, so the Plaintiff again called Discover to dispute the charges. This time a Discover employee directed the Plaintiff to mail a copy of his billing statement and marking the fraudulent charges by hand, and stated that Discover would investigate and remove any fraudulent charges. The Plaintiff followed the notice of billing error dispute process identified by Discover within sixty days after the transmission of the statement containing disputed charges.

22.    In addition to disputing the fraudulent charges directly with Discover Bank, the Plaintiff filed three online complaints disputing the fraudulent charges through the Consumer Financial Protection Bureau.

23.    Within two years prior to the filing of this lawsuit Plaintiff requested and received a copy of the credit file of the Plaintiff compiled and maintained by Equifax and Experian.

24.    Within the February 16, 2017, Experian credit report, Experian reported inaccurate information furnished by Discover claiming that Plaintiff was obligated to pay an account identified as number for account 601100714141XXXX; that the account had a balance of $4,385 as of January 26, 2017, that was above the credit limit, and that the account was past due (the "Discover representation").

25.    The information in the Experian credit report was shared with other entities considering whether to extend credit to the Plaintiff, including American Express and Capital One.

26.    The Discover representation was also contained in a February 17, 2017, Equifax credit report. Specifically, the Equifax credit report stated that the Discover account had a balance of $4,385 as of January 26, 2017, that was above the credit limit, and that the account was past due.

27.    The information in the Equifax credit report was shared with other entities, including Macys and Capital One.

28.    The Discover representation was also contained in a March 20, 2017, Trans Union credit report. Specifically, the Trans Union credit report stated that the Discover account had a balance of $4,502 as of February 26, 2017, that was above the credit limit, and that the account was ninety days past due.

29.    The information in the Trans Union credit report was shared with other entities including Bank of America.

30.    The Discover representation was false because the charges reported by Discover were fraudulent charges that were not made by the Plaintiff. Discover knew that the charges were fraudulent but reported them as being charges made by the Plaintiff anyways.

31.    Within two years prior to the filing of this lawsuit Plaintiff contacted Discover disputing the Discover representation.

32.    Plaintiff contacted Equifax on March 17, 2017, disputing the Discover

representation and provided additional information to Equifax on or about April 25, 2017.

33.    Plaintiff contacted Experian on March 17, 2017, disputing the Discover representation and provided additional information to Experian on or about April 25, 2017.

34.    Equifax and Experian responded to these disputes but did not delete the Discover representation.

35.    Plaintiff contacted Trans Union disputing the Discover representation and in response to this dispute Trans Union deleted the Discover representation from the Plaintiff's credit report file.

36.    Upon the Plaintiff's request for verification and deletion, and in accordance with its standard procedures, Equifax and Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably verify the Discover representation.

37.    In the alternative to the allegation that Equifax and Experian failed to contact Discover, it is alleged that Equifax and Experian did forward some notice of the dispute to Discover and Discover failed to conduct a lawful investigation.

38.    The Discover representation is the most derogatory item on the Plaintiff's credit report.

39.    The Discover representation has resulted in a significant drop to the Plaintiff's credit score from 646 on November 26, 2016, to 529 on March 1, 2017.

40.    The Discover representation caused Bank of America to lower the credit

limit on Plaintiff's account on March 15, 2017.

41.    The Discover representation caused American Express to lower the credit limit on Plaintiff's account on April 10, 2017.

## COUNT I
## VIOLATION OF 15 U.S.C. § 1681e(b) BY EQUIFAX AND EXPERIAN

42.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

43.    A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681a(f).

44.    Equifax and Experian are each a consumer reporting agency as defined by Section 1681a(f) of the FCRA.

45.    Section 1681n of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a). Any person who willfully fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, statutory damages, punitive damages, costs of the action, and reasonable attorneys' fees. *Id.* at § 1681n(a)(l)-(3).

46.    Section 1681*o* of the FCRA provides for civil liability against any CRA which is negligent in failing to comply with any requirement imposed under the Act. *See* 15 U.S.C. § 1681o. Any person who negligently fails to comply with any requirement of

the FCRA is liable to the consumer for actual damages, costs of the action, and reasonable attorneys' fees. *Id.* at § 1681o(a)(l)-(2).

47.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See* 15 U.S.C. § 1681e(b).

48.     When Equifax and Experian receive a dispute from a consumer, their "investigation" procedure involves little more than condensing the consumer's dispute to a two-digit code that gets transmitted electronically to the furnisher of the disputed information for comparison with the furnisher's own information.

49.     Upon information and belief, Equifax and Experiann do no independent or further "investigation" of the substance of the consumer's dispute.

50.     This method of investigation is known as "parroting" of information, and has been rejected routinely by courts throughout the country.

51.     Making matters worse, Equifax and Experian have a policy and/or procedure not to investigate a dispute lodged by a consumer if the subject of the dispute has been "investigated" by them previously. In other words, upon receipt of a consumer's dispute, Equifax and Experian's first step is to check whether the subject of the dispute has previously been "investigated," *i.e.*, whether a two-digit code has previously been sent to the furnisher of the information to check whether the data matches. If it has, Equifax and Experian refuse to do any sort of investigation into the consumer's dispute whatsoever.

52.     Upon information and belief, a procedure aimed at the expeditious elimination of work for Equifax and Experian instead of the accuracy of the underlying information is patently unreasonable.

53.     Moreover, the FCRA envisions the investigation process to involve both the CRA **and** the furnisher of the information. With two (2) separate entities involved, both of whom have distinct responsibilities to conduct a reasonable investigation, *see* 15 U.S.C. §1681i and § 1681s-2b, the consumer has greater protection and it is much more likely that inaccurate information will be corrected as quickly as possible.

54.     Because of the repeat dispute procedure, the consumer loses that protection. Equifax and Experian unilaterally determine that the furnisher of the disputed information will not even be contacted to conduct its own investigation.

55.     While the FCRA allows a consumer to pursue a cause of action against a furnisher who fails to conduct a reasonable investigation of a consumer's dispute, the furnisher **must** receive notification from the CRA, not the consumer, as a pre-requisite to the cause of action. *See* 15 U.S.C. § 1681s-2b.

56.     As described above, Equifax and Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the information they circulated about Plaintiff.

57.     As a direct and proximate result of the failures of Equifax and Experian, Plaintiff has suffered economic and non-economic loss in specific amounts to be proved at trial.

58.     As a direct and proximate result of the failures Equifax and Experian,

Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as himself.

59.    As a direct and proximate result of the willful and/or negligent refusal of Equifax and Experian to adopt and/or follow reasonable procedures as mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to, financial loss, lost credit opportunity, expenditure of time and resources, risk to security clearance and mental anguish, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

60.    The continued refusal of Equifax and Experian to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff. The injuries suffered by the Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling the Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681$n$(a)(2).

61.    Equifax and Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

## COUNT II
## VIOLATION OF 15 U.S.C. § 1681i EQUIFAX AND EXPERIAN

62.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

63.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

64.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the consumer reporting agency is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

65.    The FCRA allows a CRA to terminate an investigation "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." *See* 15 U.S.C. § 1681i(a)(3)(A). However, the FCRA mandates that "[u]pon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination." *See* 15 U.S.C. § 1681i(a)(3)(B).

66.    Equifax and Experian violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Discover; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by

relying upon verification from a source it has reason to know is unreliable.

67.     Equifax and Experian willfully and/negligently failed to conduct ***any*** investigation, let alone a reasonable investigation, of Plaintiff's dispute in violation of 15 U.S.C. § 1681i(a)(1).

68.     Upon information and belief, at no point in its review of Plaintiff's dispute did Equifax and Experian make a determination that the dispute was frivolous or irrelevant.

69.     Equifax and Experian certainly did not advise the Plaintiff that Plaintiff's dispute had been determined to be frivolous or irrelevant as expressly required by 15 U.S.C. § 1681i(a)(3)(B).

70.     As a direct and proximate result of the refusal to conduct a reasonable investigation by Equifax and Experian, Plaintiff has suffered economic and noneconomic loss.

71.     As a direct and proximate result of the refusal of Equifax and Experian, Plaintiff has suffered considerable mental, emotional and physical stress and distress.

72.     As a direct and proximate result of the disregard by Equifax and Experian for Plaintiff's disputes and the importance of the Plaintiff's good name and credit rating, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer such as himself.

73.     As a direct and proximate result of the willful and/or negligent refusal by Equifax and Experian to conduct a reasonable investigation as mandated by the FCRA and as outlined above, Plaintiff has suffered other loss and damage including, but not

limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling them to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

74.    The continued refusal by Equifax and Experian to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by the Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant 15 U.S.C. § 1681n(a)(2).

## COUNT III
## DEFAMATION BY DISCOVER

75.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

76.    Discover published the Discover representation to Equifax, Experian, and Trans Union and through Equifax, Experian, and Trans Union to all of Plaintiff's current and potential lenders on multiple occasions, including American Express and Bank of America (the "Defamation").

77.    Discover had actual knowledge that the Defamation was false because the Plaintiff had on several occasions reported that the charges were fraudulent and Discover's own investigation failed to establish that the Plaintiff actually made the fraudulent charges.

78.    The Discover representation was willful and made with malice. Discover

had actual knowledge that it was attempting to collect charges that were not made by the Plaintiff and the Defamation was made in an effort to pressure the Plaintiff to pay for the charges that were not his.

79.    Alternatively, Discover did not have any reasonable basis to believe the Defamation representation and acted with a high degree of awareness of the probable falsity or had serious doubts about the veracity of the information it was reporting to Equifax, Experian, and Trans Union.

80.    As a result of this conduct, action and inaction of Discover, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling her to an award of actual damages in amounts to be proved at trial.

81.    The Defamation, conduct and actions of Discover were willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against Discover in an amount to be determined by the Court.

## COUNT IV
## VIOLATION OF 15 U.S.C. § 1681s-2(b) BY DISCOVER

82.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

83.    Discover violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to report the Discover representation within Plaintiff's credit file with Equifax, Experian, and Trans Union by omitting information that it could not prove

that the Plaintiff owed the amounts Discover claimed were owed, unpaid and past due; by failing to fully and properly investigate the Plaintiff's dispute of the Discover representation; by failing to review all relevant information regarding same; by failing to accurately respond to Equifax, Experian, and Trans Union; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Discover representation to the consumer reporting agencies.

84.    As a result of this conduct, action and inaction of Discover, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling him to an award of actual damages in amounts to be proved at trial.

85.    Discover's conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

86.    The Plaintiff is entitled to recover costs and attorneys' fees from Discover in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

WHEREFORE, Plaintiff, Rajan J. Patel, respectfully prays for a judgment against Defendants as follows:

a.    Actual damages sustained in an amount in excess of $75,000.00 and statutory damages of not less than $100 and not more than $1,000 for violations of the FCRA;

b.    Such amount of punitive damages as the Court may allow for

violations of the FCRA;

      c.     The costs of the action together with reasonably attorneys' fees as determined by the Court;

      d.     Such other and further relief as may be just and proper.

## JURY TRIAL DEMAND

Plaintiff, Rajan Patel hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of statutory damages, punitive damages, attorneys' fees and litigation costs.

Dated: May 17, 2017                Respectfully Submitted,

               */s/ E. David Hoskins*_____
               E. David Hoskins, Esq. , No. 06705
               THE LAW OFFICES OF E. DAVID HOSKINS, LLC
               16 East Lombard Street, Suite 400
               Baltimore, Maryland 21202
               (410) 662-6500 (Tel.)
               *davidhoskins@hoskinslaw.com*

               */s/ Doris N. Weil*_____
               Doris N. Weil, Esq., No. 19679
               THE LAW OFFICES OF E. DAVID HOSKINS, LLC
               16 East Lombard Street, Suite 400
               Baltimore, Maryland 21202
               (410) 662-6500 (Tel.)
               *dorisweil@hoskinslaw.com*